## No. 6338.

CHARLES A. CONRAD VS. JOSEPH PATZELT. JAMES JACKSON, INTERVENOR AND THIRD OPPONENT.

A lessee whose property has been provisionally seized, may release it by giving one of three different kinds of bond:

First—He may give a bond, whose amount is to be fixed, on his application, by the judge, conditioned that he will satisfy whatever judgment may be rendered against him, *or*, return the property.

Second—He may give a forthcoming bond, for the amount of the claim, or value of the property, to be ascertained by appraisement.

Third—He may give an *absolute* bond to satisfy whatever judgment may be rendered against him, *embracing no obligation in the alternative*.

The release bond given by the lessee, in order to recover possession of the property provisionally seized, is the substitute for, and stands in the place of the property, and any subsequent lessor, who acquires a lien on said property, possesses a lien superior to that of the lessor whose seizure has been released.

After fifteen days from the removal of the lessee's property from the leased premises, the lien of the lessor is prescribed.

A lessor who has a lien on goods on his premises seized, and sold under a *fieri facias*, may intervene by rule, and claim to be paid by preference out of the proceeds.

APPEAL from the Fifth District Court, parish of Orleans. *Cullom, J.*

*Charles A. Conrad* and *James Brewer*, for plaintiff and appellee.

*I. Tharp*, for defendant.

*J. Ad. Rozier*, for intervenor.

The opinion of the court was delivered by

MARR, J. Joseph Patzelt leased from Charles A. Conrad the store No. 172 Camp street, for the term of one year, ending the thirty-first of

30

October, 1874, for nine hundred and sixty dollars, payable monthly, represented by twelve notes of eighty dollars each.

At the expiration of the term seven of these notes remained unpaid. Patzelt declined to renew the lease at a reduced rate, and held over, with the understanding that he was liable to be turned out at any time if Conrad should find a tenant by the year.

Patzelt leased the store No. 57 Camp street from James Jackson, and on the eleventh of March Conrad, having learned that he was about removing from No. 172 Camp street, brought suit for the rent due him, say, for seven months up to the expiration of the lease and for five months after, up to April, 1875, in all nine hundred and sixty dollars; and he caused to be provisionally seized the furniture and effects which still were on the premises No. 172 and those which had been removed to No. 57 Camp street.

On the thirteenth of March counsel for Patzelt obtained an order of court that " defendant be allowed to bond the seizure on furnishing good and solvent security in the sum of oue thousand dollars, conditioned as. the law directs."

On the same day Patzelt gave bond in favor of the sheriff, for one thousand dollars, with security, " the condition of which is such that if the said defendant shall satisfy such judgment as may be rendered against him in the suit pending, as above mentioned, then this obligation. to be void, or else to remain in full force."

The surety justified under oath, and on the same day the sheriff transferred the bond to the plaintiff, Conrad, as the law requires.

On the seventeenth of March the plaintiff, showing to the court that " the bond furnished by the defendant, upon the execution of which the release of the property provisionally seized in this suit was ordered, is insufficient in amount and is not such a bond as is required by law in such cases," took a rule on defendant to show cause why " he should not furnish bond in the sum of two thousand dollars, conditioned according to law."

This rule was submitted on the admission of Patzelt that the property provisionally seized was of a value not less than three thousand dollars, and the admission by Conrad that the bond already filed was " sufficient in amount to cover the amount claimed, with interest accrued to the date it was filed."

The court ordered defendant to furnish bond in the sum of fifteen hundred dollars, " conditioned as the law directs," and on the twenty-fifth of March defendant gave a new bond, with the same surety, who again justified under oath. The second bond was immediately transferred by the sheriff to the plaintiff, and it was identical with the first in all respects except as to the date, the twenty-fifth of March instead of the thirteenth,

and the amount, fifteen hundred dollars instead of one thousand dollars.

The suit was contested, and final judgment was rendered in November, 1875, on which a writ of *fieri facias* issued on the fourteenth of December, under which the sheriff seized and advertised for sale on the third of January, " all the furniture and movable effects contained in the premises No. 57 Camp street."

On the thirtieth of December, before the sale, James Jackson filed his petition of intervention and third opposition, stating that he had let the premises to Patzelt, by lease in writing, for a term beginning the fifteenth of March, 1875, and ending the fifteenth of September, 1876, on account of which Patzelt was indebted to him in the sum of four hundred and fifty dollars for three months rent due and thirteen hundred and fifty dollars for nine months rent to become due, and he claimed a lien, privilege, and right of pledge on the movables seized, and prayed for judgment to be paid out of the proceeds of the sale about to be made by the sheriff.

The sheriff did not remove the property, but sold it on the premises, No. 57 Camp street, which Patzelt had occupied under the lease from Jackson from March, 1875, up to the sale, third of January, 1876.

The judgment of the court below dismissed the claim of Jackson so far as Conrad was concerned, but awarded him, as against Patzelt, the full amount sued for; and the case comes up on Jackson's appeal.

On the trial Jackson's counsel took a bill of exceptions to the ruling of the court in refusing to allow him to prove that the surety on the release bond was well able to satisfy the obligation. The rights of the parties do not depend on the sufficiency of the surety. The surety justified, and, if the question were of any importance, as it is not, the legal presumption would be, in the absence of proof, that no change had taken place in his condition.

It was suggested in argument and in the printed brief of counsel for appellee that there had been laches and negligence on the part of Jackson in allowing Patzelt to become so largely indebted to him. If there were any force in this it would be somewhat diminished by the fact that Patzelt was in arrears to Conrad for twelve months rent, nine hundred and sixty dollars—seven months under the lease and five months under the reconduction—while he owed Jackson for rent due four hundred and fifty dollars, for three months only.

Again, it is urged that Jackson had notice of Conrad's rights; that the suit was notice; and, as part of the furniture was seized in the store let by Jackson to Patzelt, he must be presumed to have had actual knowledge.

So far as notice by suit is concerned, the correct rule seems to be this: where the title to property is in litigation, or where, there being no

dispute as to the title, property is under seizure and remains *in custodiam legis* to enforce some right or lien or privilege upon it, the pendency of the suit is notice to this extent, that no one can acquire from or against one of the parties any right or title in or to the property to the prejudice of that which may be awarded to the other party by the judgment. This is not because of any presumption of actual knowledge, but it is because the law, having laid hold on the property for the purposes of the suit, will not permit the ends of justice and the rights of those who have invoked its aid to be thwarted or defeated by transfers or changes or divestiture of title *pendente lite*. The reason of the rule ceases, and the rule itself is no longer applicable, when the law allows a bond to be substituted for the property, when the seizure is released, and when the law relinquishes its grasp on the thing itself and permits the owner, or person claiming to be the owner to resume the control and power of disposal of which he had been temporarily deprived by the seizure.

The fact that part of the furniture had been seized in the store leased to Patzelt by Jackson does not create even a presumption that he had actual knowledge. The notes which Patzelt gave to Jackson for the rent were dated the seventeenth of February. The date seems to have been omitted in the lease, but the term commenced on the fifteenth of March. The inference is that the contract of lease was agreed upon, most probably it was signed, on the day of the date of the notes, which are in accordance with its terms, one hundred and twenty-five dollars a month from the fifteenth of March to the fifteenth of September, and one hundred and fifty dollars a month for the ensuing year. It is quite common, in all respects regular and lawful, for parties to sign contracts of lease and rent notes, for a term to begin at a later date; and if this contract was concluded and signed on the seventeenth of February, as the date of the notes indicates, there was no occasion for Jackson to be on the premises when Patzelt took possession, and there was no reason why the keys should not have been delivered to Patzelt as soon as the contract was completed. At any rate, Patzelt must have had the keys before, as he commenced moving on the eleventh of March, and it would have been a mere accident if Jackson had happened to be on the premises and to have known of the seizure.

If Jackson is to be charged with notice by reason of the suit, he must have the benefit of the information afforded by the proceedings in the suit, that the rent claimed by Conrad was only nine hundred and sixty dollars; that Patzelt had given security to cover that amount; that the seizure had been released; and that the property seized and which was removed into his store was of a value not less than three thousand dollars.

These considerations are by no means determinative. Two lessors

claim a fund which is not sufficient to pay the rent due to both. One of them, Conrad, brought suit for the rent due him and caused the property subject to his right of pledge to be provisionally seized. The other, Jackson, acquired a right of pledge on the same property after this seizure had been set aside or released on bond, ample in amount, with good and solvent security, conditioned to satisfy such judgment as might be rendered in the suit; and the fund for which they contend is the proceeds of that property, sold by the sheriff under *fieri facias*, issued upon the judgment obtained by Conrad, for the rent due him, in the suit in which the provisional seizure was made. It becomes necessary therefore to ascertain what were the rights of Conrad, and what were the rights of Jackson, with respect to this property at the time it was seized by the sheriff, and sold under the *fieri facias*.

When we consider how much of the property in the city of New Orleans is occupied by lessees who give no other security for the rent than that afforded by the movable effects which they put into the leased premises, the importance of the issues thus presented for solution will be fully appreciated.

The judge of the court below and the counsel for appellee call the release bond given in this case a *forthcoming* bond. It may be of much more importance to ascertain the effect of the bond than to inquire as to the name by which it shall be designated. Nevertheless, it is well to see whether this is really a forthcoming bond.

In some of the States where property seized under execution is claimed by a third person, he is allowed to retain it in his possession on giving bond to abide the result of a trial of the right of property; and the defendant in execution is also allowed to retain the property seized until the day of sale, on giving bond to have it forthcoming at that time.

We have, also, a forthcoming bond, which, by the act of 1842, re-enacted in 1855, p. 477, and in Revised Statutes, section 3411, the defendant in execution whose property has been seized is permitted to give, and, on giving it, he is allowed to retain the property in his possession until the day of sale.

A forthcoming bond has for its object the delivery of the property described, and there can be no such thing as a forthcoming bond without a description of the property, so that it can be identified, and a stipulation for the delivery of that property at a specified time and place, for a specified purpose.

It will be observed that the amount of the forthcoming bond has no reference to any debt to be paid. It stipulates for the delivery of the property; and as the object is to secure that delivery, the amount is fixed solely with reference to the value of the property, sufficiently above the value to cover it fully in case of default.

No one can read the bond given in this case and call it a forthcoming bond in any legal sense of that term. The only description it contains of the property seized is: "The furniture and movables in the premises No. 57 Camp street and No. 172 Camp street;" and it recites that the property thus described had been provisionally seized, and the seizure set aside and the property released on defendant giving this bond, the condition of which is absolutely and unqualifiedly to satisfy such judgment as may be rendered against him in the suit.

But, it is said this bond must be interpreted with reference to the law under which it was given; and if it does not stipulate for the return of the property, that stipulation must be supplied: It is true that where the law or the order under which a bond is given prescribes the condition, the court may well reform it, and make it what the law or the order requires. But, where the law permits a party to give a bond with alternative conditions, he may select one of the alternatives and omit the other.

The Code of Practice gave the right to seize provisionally in certain cases, but it did not authorize the defendant to have the seizure set aside or released on bond, as in cases of attachment and sequestration. Ships and other vessels were subject to this seizure; and as the law did not permit the release on bond, masters and owners were subjected to great inconvenience and hardship, being compelled either to pay the demand on which the seizure was made, however unjust it might be, or to keep the vessel at the wharf idle until the suit could be decided. The Legislature applied the proper remedy by amending the Code of Practice, and providing that "whenever ships or other vessels are provisionally seized the defendant shall be permitted to have the seizure set aside on executing bond in favor of the plaintiff, as in cases of attachment." Act of 1839, No. 53, section 12.

Referring to the Code of Practice, as it was at that time, it will be seen that the condition of the release bond in cases of attachment was absolute, without qualification, that defendant "will satisfy such judgment as may be rendered against him in the suit pending." Original article 259.

In 1852 article 259 was so amended as to allow defendant to have the property attached released on giving bond conditioned to "satisfy such judgment, *to the value of the property attached*, as may be rendered against him in the suit pending." Of course, bonds given for the release of ships and other vessels provisionally seized were subject to this modification. Thus the law stood; and property provisionally seized for rent could not be released on bond. There was some reason for this. The law gives the lessor, "for the payment of his rent, a right of pledge on the movable effects of the lessee which are found on the property leased." C. C. article 2705 (2675), and he "may take the effects themselves and

retain them until he is paid." Article 3218 (3185). When property provisionally seized, or seized on any other mesne process, is released on bond, it is not in legal custody, and it returns to the possession of the defendant precisely in the condition in which it was seized, except that, *quoad* that seizure, the bond has been substituted for it, and it can not be seized again under the same writ.

The law authorizes the lessor, in case the movables on which his right of pledge exists have been removed from the leased premises, to pursue and seize them within fifteen days, provided they can be identified and continue to be the property of the lessee. C. C. article 2709 (2679). And if the effects provisionally seized for rent should be released on bond, the defendant, the lessee, might sell them, or might put them into other premises, leased from another lessor, so that the first lessor could no longer exercise his right of pledge, and he would be compelled to give up his security on the property itself and to look to the bond alone, which the law has permitted to be substituted for the property. The right of pledge exists so long as the property remains on the leased premises, and it may continue for fifteen days after the removal; but if it has been removed, and the fifteen days have elapsed, the right of the lessor is gone, and he has no higher or different claim upon the property than any other ordinary creditor.

No doubt the peculiar nature of the right given to the lessor caused seizures for rent to be excepted from the operation of the remedial statutes, which permitted the release on bond of property provisionally seized to enforce mere privileges. The precise object of the provisional seizure by the lessor is to prevent the removal of the effects out of the leased premises, which might be fatal to his rights; and there was apparent incongruity in the lessor's right of pledge and right to keep the property until his rent was paid, and the right of the lessee to have the provisional seizure of the property, to enforce the lessor's rights, released on bond. The law would not, therefore, permit the property subject to the lessor's right to be taken out of his control, except to go into legal custody, to be detained, condemned, and sold for the benefit of the lessor.

But at length the Legislature, sole judge in questions of policy and expediency, chose to put all defendants whose property might be provisionally seized on the same footing, whatever might be the cause of the seizure. By act approved the sixth of July, 1867, it was provided that " whenever ships, vessels, *or any other property* are provisionally seized, the defendant shall be permitted to have the seizure set aside on executing his obligation, with a good and solvent security, for whatever amount the judge may determine as being equal to the value of the property to be left in his possession, *or* the condition of said bond to be that he will

satisfy such judgment as may be rendered against him, or return the property."

This section figures as part of the Code of Practice, article 289, third clause, the word " or," italicised above, between the word " possession " and the words " the condition," being omitted.   There can be no doubt that seizures for rent are subject to this law, and this court so decided expressly in Lepretre vs. Barthet, 25 An. 124.

The Legislature thought proper to make another amendment to the Code of Practice, by act approved the ninth of September, 1868.   This act relates exclusively to provisional seizures at the instance of lessors; and it *permits* the lessee in all cases to have such seizure released " upon executing a forthcoming bond or obligation with a good, solvent security for the value of the property to be left in his possession, or for the amount of the claim, with interest and costs; provided further, that the value of the property shall be fixed by the sheriff, or one of his deputies, with the assistance of two appraisers, selected by the parties, twenty-four hours notice being previously given to the lessor or his counsel to select an appraiser."

This act now forms part of the Code of Practice, article 287.   It in no manner conflicts with the act of the sixth of July, 1867, now part of the Code of Practice, article 289, and both are in force.   The effect is that, no matter what property may be provisionally seized, whether at the suit of a lessor, for his rent, or of any other person, for any other of the causes specified in the Code of Practice, the defendant is *permitted* to have the seizure set aside on giving bond for whatever amount the judge may determine, conditioned to satisfy such judgment as may be rendered against him or restore the property.   If the defendant desires to avail himself of the *permission* granted him by this act, he must apply to the judge to fix the amount of the bond.

The act of 1868 is restricted to seizures by lessors; and it permits the lessee to have the seizure released on giving a forthcoming bond or obligation for the value of the property or the amount of the claim, with interest and costs.   If the lessee should prefer to avail himself of this act, the law makes it the duty of the sheriff, where the bond is to be for the value of the property, to fix the value by an appraisement, in which both parties are represented; and no action by the judge is required, and no application is to be made to the judge.

In this case the value of the property was so much in excess of the amount of the claim that defendant had no occasion to give a forthcoming bond, or to incur the expense and delay of an appraisement. He was a dealer in furniture; and the property seized was his stock in trade, merchandise which he was actually removing into the premises recently leased by him.   His business was necessarily suspended, and

the removal of his goods stopped while the seizure lasted; and he preferred to avail himself of the act of 1867, because it was more expeditious, and more economical. It was the work of a few minutes only, an *ex parte* proceeding, in open court, or at chambers, to have the amount of the bond fixed by the judge; and nothing more was to be done after that but for the defendant to go to the sheriff's office with his security and sign the bond.

The mere wording of the bond shows that the sheriff understood that he was acting under the law of 1867; he adopted its phraseology, and he observed all its requirements, taking the bond upon the order of the judge, and for the amount fixed by him.

We have designated these two acts, the one as the act of 1867, the other as the act of 1868; but it will be observed that the act of 1868 forms part of the Revised Code of Practice, article 287, while the act of 1867 is part of article 289. The Revised Code of Practice was adopted as a whole, as a single act of the Legislature, approved on the fourteenth of March, 1870; and if there should be any conflict in these two articles, article 289 must prevail, because it is the last expression of the legislative will.

There is no conflict however. By article 289 the defendant in any case of provisional seizure may have the seizure set aside on giving bond in an amount to be fixed by the judge, conditioned to satisfy such judgment as may be rendered against him, or return the property. By article 287 the lessee may have the seizure released on giving a forthcoming bond or obligation for the value of the property or the amount of the claim. Both are remedial statutes; one applies to every possible case of provisional seizure, the other is applicable to seizures by lessors alone. Both are intended for the convenience and benefit of the defendant alone; and he may avail himself of the relief afforded by the one or the other, as his interest and convenience may require.

It was to the interest of defendant to give the bond in the form in which it appears; and this was his deliberate choice. It is not possible to admit any other hypothesis, when we remember, in addition to what has just been stated, that defendant gave two bonds, one on the thirteenth, the other on the twenty-fifth of March; that these bonds are identical, except as to dates and amounts; and that defendant had the benefit of the advice and assistance of his counsel in fixing the amounts and giving both bonds.

If a defendant is *permitted* to give a bond with an alternative condition, what law, what reason, forbids him to select that one of the alternatives which best accords with his interest and his convenience? By the act of 1868, defendant might have given a forthcoming bond; but he was not compelled to do so. This act, like that of 1867, is

Conrad vs. Patzelt.

permissive, not mandatory. The great relief which these two acts had in view, the great change which they effected, was in permitting the defendant, in any and all cases of provisional seizure, to have the seizure set aside on bond; and while the one act permits this to be done by a bond conditioned to satisfy such judgment as may be rendered or return the property, and the other permits the lessee to give a forthcoming bond, neither act forbids the defendant to give a bond conditioned, absolutely, to satisfy such judgment as may be rendered against him, or declares such a bond to be invalid.

Defendant did not give a forthcoming bond; he chose to give a bond to satisfy such judgment as might be rendered against him. If he had chosen to give a bond conditioned to satisfy such judgment or return the property, it would have been no better security than the bond which was actually given, since it would have been entirely at the option of defendant whether to have satisfied the judgment or to have returned the property, if he could have done so. If a person who has given a bond, conditioned to do one or the other of two things specified, may discharge his obligation by doing one of them, it is not possible to suggest any good reason why he might not legally and validly have made his election *in limine*, and have omitted one of the alternatives, as was done in this case.

In LePretre vs. Barthet, 25 An. 124, the lessee gave a bond conditioned precisely as the bond is in this case. In a suit against the surety, it was objected that no law authorized the bond. The court said it was authorized by the act of the sixth of July, 1867; and the judgment of the court below against the surety was affirmed.

If we undertake to reform the bond in this case by inserting the words in the condition, " *or return the property*," we shall incur the risk of *making* a contract for the parties, which they did not choose to make for themselves, instead of interpreting and giving effect to that which they actually did make.

The bond is not a forthcoming bond; and it is to no purpose to say that the defendant had a right to give a forthcoming bond. The fact still remains that he did not give a forthcoming bond; and our business is to ascertain what he did, not what he might have done, in the free exercise of his will and election.

But, call this bond what we may, what was its effect? The act of 1839 *permits* the defendant to have the seizure *set aside;* the act of 1867 *permits* the defendant to have the seizure " *set aside*," and the act of 1868 *permits* the lessee to have the seizure " *released*." Whether the seizure be " *set aside*," or whether it be " *released*," the property ceases to be in the custody of the law; and it returns to the possession of the defendant, precisely as if no such seizure had been made.

Conrad vs. Patzelt.

The proceeding *in rem* in the admiralty is quite analogous to our provisional seizure. The admiralty warrant lays hold on the ship or other property, and retains it in legal custody until some one appears and claims it, and procures it to be released on bond. When the bond is given, the property is restored to the claimant; and it goes into his possession precisely as if no such seizure had been made, and subject to the liens existing at the time the seizure was made, except that the bond has taken the place of the property, with respect to that seizure, and the property is released from the lien under which that seizure was made. Other liens existing at the time, or those that may be after acquired, will be preferred to the demand secured by the bond. See the " Timor," 4 Blatchford 93, decided by the late Justice Nelson of the Supreme Court of the United States. The " T. P. Leathers," 1 Newberry 432; 4 Abbott's Digest, No. 488; Benedict's Admiralty Practice, sections 447, 497.

In Brandon vs. Bobo, 12 An. 616, where property was seized under execution, and the defendant gave a forthcoming or delivery bond under the act of 1842, Revised Statutes, sec. 3411, the court held that he might validly sell the property before the day fixed for the delivery, and that it could not be pursued in the hands of the vendee. In such case the only recourse of the sheriff or of the seizing creditor is on the bond.

In Harralson vs. Boyle, 22 An. 210, a provisional seizure was made for rent, and the defendant gave bond under the act of 1867, conditioned to satisfy such judgment as might be rendered or return the property. Subsequently, he sold part of the property. The lessor, having obtained judgment for his rent, about three months after the provisional seizure, with recognition of his privilege, seized, under *fieri facias*, the property which had been sold by the lessee after the release on bond. The court said the lessor's right to follow the property which had been removed from the leased premises continued for fifteen days only; and the title of the purchaser was maintained. Whether the property has been provisionally seized and released on bond, or whether it has not been provisionally seized, the lessor's right ceases at the expiration of fifteen days after the removal from the leased premises.

It seems too clear for argument that if the defendant in execution, having given a forthcoming or delivery bond, or the lessee, having given a release bond, may validly sell the property, that he might also pledge it, or subject it to the right of pledge by removing it into premises leased from another lessor; and this does not depend upon the form of the bond. It results from the effect of the bond, from the release of the seizure, and the resumption by the owner of his power and dominion over that which is his, and which is in his possession. It follows that when Patzelt's property, provisionally seized by Conrad, was released on bond, and was placed in the premises leased to Patzelt by Jackson, that

Jackson's right of pledge attached to it; and after the expiration of fifteen days Conrad's right of pledge was barred, lost by prescription, and he was remitted to the security afforded him by the bond.

Blanchin vs. Fashion, 10 An. 49, and Harrison vs. Jenks, 23 An. 707, have been cited as establishing a contrary doctrine as to the effect of the release on bond of property provisionally seized.    It will be seen that our courts do not follow the rule in the Admiralty that the release bond, in a seizure *in rem*, extinguishes the lien under which the seizure was made.    The difference is that the release, on bond, of property provisionally seized, restores it to the condition in which it was at the time the seizure was made, subject to the lien or privilege under which the seizure was made, and to all other liens which existed at that time, just as if no such seizure had been made ; and this is precisely what was decided in Blanchin's case, and in Harrison vs. Jenks.

Blanchin brought suit against the steamboat Fashion and owners, and caused the boat to be provisionally seized.    The boat remained in the custody of the sheriff for one day, and the seizure was set aside on a bond conditioned exactly as the bond is in this case.    At that time privileges against steamboats were prescribed by the lapse of sixty days. Blanchin's account began in January, and on the tenth of March he recovered judgment for the whole amount, and on the twenty-third of March the boat was seized by the sheriff under *fieri facias* issued on that judgment.    The proceeds of sale under this writ were brought into court for distribution, and Blanchin claimed the whole amount of his debt, with privilege.    The court said the release of the boat on bond did not extinguish the privilege for which the seizure was made; it simply left that privilege in the exact condition in which it was at the time the release bond was given.    During the one day that the boat was in actual custody the prescription of sixty days ceased to run.    The release on bond took the boat out of legal custody; and the prescription began to run again immediately so far as other creditors were concerned.    The prescription was arrested by the seizure on the twenty-third of March, but, in the *concurso*, all the items in Blanchin's account prior to sixty-one days before the twenty-third of March were prescribed and ceased to operate as a privilege.    The seizure did not create the privilege, nor did the release on bond extinguish it.    It was extinguished by the lapse of time.    The prescription was suspended while the boat was in the custody of the law; it began to run again the moment the law relinquished its hold on the property.

In Harrison vs. Jenks, 23 An. 707, the plaintiff seized provisionally for rent, and the seizure was set aside on bond.    The defendant remained in the same premises, the house let to him by Mrs. Harrison, and the property was not removed, but remained in the same premises as before the seizure.

The persons who had sold the furniture to Jenks sequestered it a few days before the seizure by Mrs. Harrison; and they maintained that Mrs. Harrison's right as lessor was extinguished by the release bond. The court held that a privilege which does not depend upon the seizure is not extinguished by the release of that seizure. When the seizure was released the property remained just as it was before, in Mrs. Harrison's house, subject to Mrs. Harrison's right of pledge. That is, the release restored the property to the exact condition in which it was at the time the seizure was made.

Conrad seized for rent, and the seizure was set aside on bond. At the time this seizure was made part of the property subject to Conrad's right of pledge had been removed out of the premises. Availing himself of the right given to the lessor by the Civil Code, Conrad followed the property and seized it within the fifteen days. When the seizure was set aside, on the thirteenth of March, Conrad's right of pledge was not extinguished; and if the property had remained in his house, his right of pledge would have continued just as in Harrison vs. Jenks. But that which the release on bond did not do was fully accomplished by the removal of the entire property out of the premises of Conrad into the store and premises of Jackson, and by the lapse of fifteen days after that removal; and Conrad's right of pledge, which existed for fifteen days, and for fifteen days only, after the removal, was extinguished, no longer existed at the expiration of the term.

It has been suggested that when Conrad seized under the *fieri facias,* Jackson should have seized also, and that his failure to do so gave Conrad a right of preference. But this proposition is wholly untenable. In Sheldon vs. Canal Bank, 11 Rob. 181, it was held that the mere seizure by the sheriff does not divest the debtor of his property. In this case the sheriff did not remove the property; it continued on the same premises, and still belonged to the lessee, and Jackson intervened and asserted his right before the sale.

In Robinson vs. Staples, 5 An. 712, the plaintiffs seized under *fieri facias.* The lessors of the debtor, Staples, took a rule on Robinson, plaintiff, to show cause why the proceeds of the sale about to be made "to to the amount of the entire rent due and to become due," should not be paid to them as privileged creditors; and the court of first instance maintained this right and claim of the lessors.

Judge Slidell, delivering the opinion of this court, affirming the judgment in favor of the lessors, said: " It is not well argued by plaintiff's counsel that the lessors can not have their privilege in this case because they did not make a provisional seizure under the statute. THE PROCEEDING WAS UNNECESSARY, THE PROPERTY BEING ALREADY *in custodiam legis.*"

In Harmon vs. Juge, 6 An. 768, two attachments were levied on a stock

of goods, and they were afterward sold under *fieri facias* on the judgment, with privilege, in favor of the attaching creditors. Harmon, the lessor, after the sale, before the·delivery of the goods, took a rule on the seizing creditors to show cause why the rent due him should not be paid out of the proceeds in the hands of the sheriff; and the judgment of the court below, in his favor, was affirmed by this court.

In Vaught vs. the City, 12 An. 339, the property of defendant was seized under *fieri facias*. Some twenty-five days after this seizure, before the sale, McLin intervened, and claimed the lessor's right of pledge on the movables. The court held that this was proper proceeding, by intervention and third opposition, without seizure of the effects already under seizure, and that the lessor was entitled to be paid the full amount of his rent out of the proceeds of the sale under *fieri facias*. The court said: "When McLin asserted his privilege it is clear that the defendant in execution had not been divested of his title to the property thus seized, and that the property had not been removed from the leased premises."

In Case vs. Kloppenburg, 27 An. 482, it was held that the lessor could not prevent the sale, under *fieri facias*, at the suit of an ordinary creditor, of the effects of the lessee found on the leased premises ; and that he must intervene and assert his right to the proceeds contradictorily with the seizing creditor.

But it is said the condition of the release bond has been complied with by the surrender of the property, and by the sale by the sheriff, so that the bond is not available as security to Conrad. It would be premature and improper for us to express any opinion now as to the effect of the release bond, so far as the surety is concerned. The plain answer to the objection is that there is no stipulation in the bond for the surrender or the return of the property. But,.if it had been a forthcoming bond, the property, after the release of the provisional seizure, had become subject to Jackson's right of pledge; it was in Jackson's house, constructively in Jackson's possession, and by timely and proper proceeding, he asserted his right before the sale, as in Robinson's case, 5 An.; Harmon's case, 6 An.; and McLin's case, 12 An., and, as in these cases, the property was not removed from the leased premises in which it was found until after the sale by the sheriff. Patzelt could not have surrendered it, nor could he have removed it, nor could he have authorized the sheriff to seize it, nor could it have been sold at the instance of any ordinary creditor, except in subordination to Jackson's superior right of pledge.

It is urged that this interpretation of the law will defeat the right of the lessor, and will make the provisional seizure the means of extinguishing his pledge. The answer is, the lessor may lock the doors and prevent the removal of the effects until the rent is paid, but if he should be

compelled, or should choose to resort to provisional seizure, the same law which gives him that right gives the lessee the right to have the seizure set aside on bond. The law requires a good and sufficient bond. It is the lessor's right to have such a bond; and in this case Conrad appeared, and, at his instance, the court increased the bond to an amount exceeding by one half the debt sued for.

The judgment of the court below discriminates between these lessors; and it gives the preference to the one from whose premises the property had been removed more than nine months before the sale, while it denies any right of pledge whatever to the lessor on whose premises the property had been for more than nine months, and on whose premises it was found and was seized and sold.

It must be remembered that if Conrad is a favored creditor, Jackson is an equally favored creditor; that Conrad's right of pledge was extinguished by the lapse of time after the removal of the property from his premises; that Conrad had the security of a bond, the sufficiency of which as to the amount and solvency of the surety has not been questioned, while Jackson has no other security than that afforded him by the proceeds of the property on which he had the right of pledge at the time it was seized and sold under the *fieri facias;* that Jackson has done nothing by which the right given him by the express terms of the law has been impaired; and if it is a hardship for Conrad to be remitted to an action on the bond, which is simply the effect of the law which he invoked, it would be a much greater hardship for Jackson to be deprived of the only security which the law affords him and to lose his entire rent.

But the controversy is not to be determined by any argument *ab inconvenienti.* Its proper solution depends upon the law; and that law which authorizes the lessee to have the provisional seizure set aside on bond necessarily remits the lessor to the security afforded him by that bond if the lessee should remove the property, or incumber it, or subject it to the right of pledge in favor of a new lessor, or so deal with it that it could not be reached and made available under the ordinary process of *fieri facias;* and such is the category in which this property was placed by the removal into the store leased from Jackson.

The judgment appealed from is clearly erroneous in so far as it gives priority to the claims of Conrad. Since the judgment was rendered all the rent notes of Patzelt, held by Jackson have matured, and it is proper that the judgment should be amended in that respect.

It is therefore ordered, adjudged, and decreed that the judgment appealed from in so far as it dismisses the reconventional demand of Joseph Patzelt be affirmed; that the said judgment in so far as it is in favor of James Jackson and against Joseph Patzelt be amended as here-

inafter set forth; and that in all other respects ·the said judgment appealed from be avoided and reversed. And it is further ordered that the intervention and third opposition of James Jackson be maintained; and accordingly that the said James Jackson do have and recover of and from Joseph Patzelt the sum of eighteen hundred dollars ($1800), with interest at the rate of eight *per cent per annum* on the sum of one hundred and fifty dollars ($150) from the fifteenth day of October, 1875, and like interest on the like sum from the fifteenth day of each and every succeeding month up to and including the fifteenth day of September, 1876, until paid, and that the same be paid first and by priority and preference over the claim of Charles A. Conrad, out of the proceeds of the property and effects seized on the premises No. 57 Camp street, leased by James Jackson to Joseph Patzelt, sold by the civil sheriff of the parish of Orleans under the writ of *fieri facias* issued upon the judgment in favor of Charles A. Conrad against Joseph Patzelt, No. 6408 of the docket of the Fifth District Court for the parish of Orleans; and it is further ordered, adjudged, and decreed that the costs of the intervention and third opposition of James Jackson in the court below and the costs of this appeal be paid by the said Charles A. Conrad.

---

### CONCURRING OPINION.

EGAN, J. The lessor has for the payment of his rent and other obligations of the lease a right of pledge on the movable effects of the lessee which are found on the property leased. C. C. 2705. This gives the lessor a preference right of payment out of the proceeds of such movable effects and also the right to take the effects themselves and retain them till he is paid. C. C. 3218. While he has this right to retain the thing itself, he also has a preference right of payment out of its proceeds which entitles him to be preferred before other creditors owing to the nature of his debt. This comes fully within the definition of privilege given in the law. C. C. 3186. The lessor's privilege is classed in the Code among the debts which are privileged upon certain movables. C. C. 3216. And again : "The privilege of the lessor is enforced on the property subject to it in the manner described in the title of lease." C. C. 3219. [In the Code of Practice it is spoken of as a "lien," which in common intendment answers to the definition of privilege given in the Code. The lessor's rights are treated of under the head of privileges in the Civil Code, and the order of payment with reference to the other creditors and privileges regulated under that head, C. C. 3258 and 3259, and while he has under the law *more* than a privilege, a right of pledge, he has no less than a privilege as defined in the law and as frequently·

Conrad vs. Pàtzelt.

held by the courts. It is in general essential to the contract of pledge that the creditor be put in possession of the thing given to him in pledge; that actual delivery of it be made to him. C. C. 3152. By a fiction of the law the possession of the lessee on the premises of the lessor is considered for the purposes of this peculiar pledge that of the lessor. It is *this right of pledge only* which is treated of under the title of "Lease" in the Civil Code. "In the exercise of this right the lessor may seize the objects which are subject to it before the lessee takes them away, or *within fifteen days after* they are taken away, if they continue to be the property of the lessee and can be identified." C. C. 2709. He may seize, *even in the hands of a third person,* such furniture as was in the house leased if the same has been removed by the lessee, *provided he declare on oath that the same has been removed without his consent within fifteen days previous to his suit being brought.* C. P., art. 288. It will be perceived from these provisions of the law that this extraordinary right given to the lessor *can only be exercised* while the property subject to it *is on the leased premises,* or within fifteen days after removal, and not even within that time if the lessee has sold the property. This right is "*stricti juris,*" and can not be extended to other conditions or for a longer time. It is absolutely at an end after the lapse of fifteen days from the removal of the property. It is *this right* which our predecessors held to exist independent of registry. This is the only view in which these decisions can be reconciled with article 123 of the constitution of Louisiana, which abolishes tacit mortgages and privileges, and provides that "no mortgage or privilege shall hereafter affect third parties unless recorded in the parish where the property to be affected is situated," and with the statutes passed in pursuance of that article. See Civil Code, 3273 and 3274, to the same effect.

This article of the constitution, in my opinion, declares a new policy, the want of which had long been felt in this State, a policy which the courts should not and can not contravene, and which requires registry of all *privileges,* without distinction or exception, in order that they may affect third persons. It is asked how can it be known what property is subject to a recorded lessor's privilege; how can it be identified? To this it may be answered, that the same difficulties exist in regard to the privilege of the laborer, the overseer, the furnisher of supplies, and many other privileges, the necessity and effect of the registry of which is daily recognized by the courts and required by law. The plaintiff in the case at bar has not preserved his *privilege* against third persons by such registry, and his right must yield to that of the second lessor, the third opponent, in whose premises the property was seized under the *fieri facias,* unless it is preserved by his provisional seizure, issued within fifteen days after its removal from his premises. Had he thought proper,

31

he could have retained the effects of the lessee, under article 3218 of the Civil Code, until he could have obtained a decree of court for their sale without resort to a provisional seizure, the effect of which was to take them out of his custody into that of the law, to place them *"in custodiam legis,"* and to give the defendant the right to resume possession by executing bond. Of course it must be assumed that plaintiff contemplated this, for such was the law, of which the defendant availed himself by giving the required bond, and continuing his business as merchant in the house of the third opponent until the seizure under *fieri facias,* which gave rise to the present litigation, and which took place some months after that under the provisional seizure. Now it has been often held that a provisional seizure, a mere conservatory writ, like a sequestration, gives no privilege: That springs only from the law and the nature of the debt. Neither does the dissolution of the writ and the release of the property on bond *destroy the privilege.* See steamer Fashion's case, 10 An. 49. This is not a question of *"destruction"* of privilege, but of its *preservation* or not as against third persons.

The only cases in which the pendency of suit operates notice to the world, so that no adverse right can be acquired, are suits for property; for some specific thing, which is the subject of the litigation, or when it is in legal custody.

In England, but never in this State, it has been held to apply to a mere suit to enforce a mortgage, but there a mortgage vests in the mortgagee the legal title, while the equity of redemption alone remains in the mortgageor. With us a mortgage is a mere security, a mere incumbrance upon the property, while the legal title still remains in the mortgageor, and our courts have never extended to them the doctrine of notice from the pendency of suit, which does not even prevent the mortgage perempting, unless reinscribed. In my opinion, and under the authority of the repeated decisions of this court *"in consimili casu,"* no intervention would have been entertained in this case from the moment the property was released on bond. From that moment it was no longer *"in custodiam legis,"* and any claimant must have pursued it where he found it. From that moment the bond stood in the place of the property to secure the rights of the plaintiff and to answer his judgment, unless relieved by its voluntary restoration. Any other view would be at war with the policy which favors the right of alienation, and is especially of the class of property seized in this case; and under any other view the giving of bond for the release of the property would be motiveless, and wholly without advantage to the defendant. The plaintiff has the security of the bond of release, given in this case—to which the third opponent can not look for his protection—and might well be held to look to his bond under the equitable doctrine invoked by the counsel for the third oppo-

Conrad vs. Patzelt.

nent.  But under the views before· expressed, the plaintiff's right of pledge had expired by the lapse of more than fifteen days from the removal of the property before the seizure under *fieri facias*.  His right of privilege was lost, as to third persons, for want of registry, and his right derived from the seizure under *fieri facias* must yield to the superior right of the third opponent, in whose premises the property was found by the sheriff, and who resorted to the mode pointed out by law to .protect and assert that right.

It is said, however, that he had not recorded his lease, and is in no better position than plaintiff.  This might be true, had he not opposed the plaintiff's seizure while the property was still on the premises, and affected by all his rights as lessor, subject to which the plaintiff had a right to seize and sell the property of his judgment debtor.  By the third opponent interposing the shield of the law directly in the path of the plaintiff who *quoad* this proceeding is a *party* and not a *third* person the plaintiff necessarily occupies as to the third opponent and his rights a very different position from that occupied by the third opponent as to the original suit and provisional seizure of plaintiff, to which he was no party. Two articles of the Code of Practice authorize release bonds in cases of provisional seizure.·  The first, 287, applies solely to rent seizures, the second, 289, applies to all provisional seizures.  This has been sufficiently discussed, and whatever might be the effect of the bond given under article 287, it is only necessary for me to say that both the plaintiff and defendant evidently treated the bond in this case as given under article 289, and for an amount fixed by the judge, which was neither that of the claim with interest and costs, nor equal to the value of the property ascertained in the manner provided in article 287, *i. e.*, by the sheriff, with the assistance of two appraisers.  To argue, then, that article 287 alone authorizes release bonds under provisional seizures for rent, is to argue that plaintiff, upon whose rule and contradictorily with whom the bond in this case was given, has no *judicial* bond for his protection.  I do not, however, subscribe to this view.  The bond was given and taken under order of court, is to be interpreted by the law as to its obligations, and the plaintiff is entitled to its benefits which it is presumed are ample for his protection, as it was taken for an increased amount on his application, and he accepted the surety by not objecting to him as insufficient.

I concur in most of the reasoning and in the decree in this case.

## DISSENTING OPINION.

DeBLANC, J.    On the eleventh of March, 1875, Charles A. Conrad brought suit against Joseph Patzelt, for $960, alleged to be due him for the lease of a store on Camp street, in the city of New Orleans.

On the same day, the eleventh of March, 1875, having been informed that defendant had partly removed and was then engaged in removing to another store the furniture and effects subject to his rights as a lessor, plaintiff immediately applied for and obtained the provisional seizure of said furniture and effects, the most of which was yet in his (Conrad's) store.

The provisional seizure thus made was released, first on a bond which was declared insufficient in amount, afterward on a bond the amount of which was fixed by the lower court. From that date the property seized was transferred to and remained in defendant's possession until the third of January, 1876.

Conrad obtained judgment against Patzelt, and, under a writ of *fieri facias*, issued out of said judgment, the property which had been provisionally seized and released on bond was again seized, advertised for sale, and sold on the third of January, 1876, for $1276 40, and, on the thirtieth of December, 1875, four days before the sale hereinbefore mentioned, and more than nine months after the provisional seizure by Conrad, James Jackson filed a third opposition, in which he prays for judgment against Patzelt for four hundred and fifty dollars, which he alleged was then due him, and for the additional sum of thirteen hundred and fifty dollars to become thereafter due. In that opposition he claims to be paid by preference to Conrad out of the proceeds of the sale of the property which had been seized and advertised for sale to satisfy the latter's judgment.

On the third of April, 1876, Patzelt filed an exception, in which he contends that, as to a part of his claim, Jackson's action was premature. His exception was not discussed and passed upon, and judgment was rendered against him in favor of Jackson, not merely for the rent due at the date of the institution of the latter's suit, but also for the amount of the notes which matured since the suit and since the rendition of the judgment.

The evidence establishes that on the day of the trial of Jackson's intervention, the twentieth of March, 1876, Patzelt was owing him for the rent of the store only six out of the eleven notes sued upon, and the judgment should have been for exclusively the amount of the matured notes, nine hundred dollars, with interest, as thereon stipulated.

Article 287 of the Code of Practice provides that, " when a lessor sues for rent, whether due or not due, he may obtain the provisional seizure of the property subject to his pledge." This means that, under specified circumstances, the lessor may proceed to provisionally seize for rent due and to become due, but does not authorize a final judgment on an obligation, the consideration of which has not accrued and may never accrue.

It may be that Patzelt has retained possession of the premises leased

Conrad vs. Patzelt.

from Jackson until the expiration of the lease, on the fifteenth of September, 1876, and that he is bound for every one of the notes furnished to said Jackson, and which matured after the date of said judgment, but, so far as those notes are concerned, we can only reserve to both parties their rights of action and defense on and against the same. C. P. 158; 22 An. 50.

The questions which now remain to be examined are:

First—Was Conrad's pledge, on the property provisionally seized by him, released by the effect of the forthcoming bond furnished by Patzelt?

Second—Was Conrad bound to sue on exclusively that bond to enforce his rental claim?

First—Under our Code, the lessor has more than a privilege on the lessee's movables found in the house let. He has the absolute right, without writ or process, to take and retain those movables until he is paid. R. C. C. 3218. In the exercise of that right he may seize the lessee's effects before they are taken away, or within fifteen days after their removal. He may then seize, according to the Code of Practice, even in the hands of third persons, and, according to the Civil Code, he can seize after the removal, only when the removed effects continue to be the property of the lessee and can be identified. C. P. 288; R. C. C. 2709.

The apparent conflict between these articles of our Codes has been correctly explained. In the sixteenth Annual, page 351, this court held that the term "third person" in the 288th article of the Code of Practice applies to depositaries, bailees, pledgees, and all other persons, except purchasers.

Why is the provisional seizure allowed to the lessor? In the clear and positive language of the law, it is allowed *that the lessor may not be deprived of his pledge.* Is it not evident, then, that the sole object of the provisional seizure is to preserve and not to destroy the lessor's right; is it not as evident that the sole effect of the forthcoming bond is to release but the provisional seizure? Adopt any other construction, and what would be the result? The evidence of one of the highest rights granted by the law, protected and enforced by every court, would invariably destroy the pledge which secures that right, and the once favored creditor would invariably be left with an action on the bond. That construction is repugnant to the intent and to the very letter of the law.

The lessee has an absolute right to give bond and release the seizure; he can do so without the consent and against the will of the lessor, but that bond can not, does not, lessen, impair, or destroy the pre-existing pledge, that pledge which springs, not from the seizure, but from the law. As soon as the bond furnished by the lessee is accepted, the seizure falls, but the right of pledge preceded, and it survives the seizure. 22 An. 210; 23 An. 707.

The lessor's right is not granted by any article to be found in the chapter of the Civil Code which treats of privileges. There it is classed, not as a privilege, but among the claims to be paid by preference; there we read that enactment, pregnant with but one signification, that the lessor's right is of a higher nature than a mere privilege. The right itself is granted by the 2705th article of said Code; it is called a pledge, and, as a pawn, that pledge invests the creditor with the right of causing his debt to be satisfied by privilege and in preference to the other creditors of the debtor out of the proceeds of the movables on which it bears. R. C. C. 3157.

Let us assume, in disregard of the law, that the lessor's right is but a privilege, and that, as Conrad's lease was not recorded, it remains without effect as to third persons. Would that strained construction avail or benefit Jackson? Has he been more vigilant than Conrad? Is he claiming under a recorded lease? The first and last seizure by Conrad were made before he had any legal notice, by registry or otherwise, of the existence of a lease between Jackson and Patzelt, and, under the assumed construction, the privilege resulting from Conrad's last seizure would outrank that of opponent.

It may be urged that, as the lessee's possession is that of the lessor from the time the furniture and effects went into Jackson's store, they were held by Patzelt for Jackson. If we divide that proposition, it is a true, a correct one. When one leases his house or his farm, the lessee's possession of that house and that farm, the title to which is in the lessor, is, can, and should be but the lessor's possession; but, applied to the lessee's possession of his own effects and furniture, that proposition is unfounded in fact, untenable in law, as then the lessor's right is on and not in and to the property.

So far as relates to the property which had been provisionally seized by Conrad, was ever Jackson a pledgee? Has he at any time had either a real or constructive possession of that property? Was it delivered to him as a lessor, to Patzelt as the owner, and free from incumbrance? It was merely left in the latter's possession as a keeper, with Conrad's right resting on it, unchanged, unimpaired, indestructible.

The lessor's pledge, as the pawn, secures a debt; but the first secures but one claim, that of the lessor, the other secures any claim, whatever may be its nature. Those pledges are alike in some respects, different in others. That of the lessor leaves the thing in the lessee's possession; the other does not and can not exist without actual delivery to and possession by the creditor. To have effect against third persons, the act which evidences a pawn must be recorded; the lessor's pledge, without being recorded, preserves its effects against all. 23 An. 453; 24 An. 143; 2 An. 14.

Conrad vs. Patzelt.

In his "Contrat de Louage" Pothier says: "Si le locataire d'une maison à l'insu du locateur envers qui il est redevable du loyer et autres obligations de son bail, a transporté ses effets dans une autre maison qu'il a prise à loyer, le premier locateur a droit de les suivre dans cette maison, et doit être préféré au nouveau locateur, et non pas venir en concurrence avec lui."

The lessor's is an extraordinary, an exceptional pledge. It bears on the effects which are on the leased premises at the commencement, and those which are found there at the expiration of the lease. It so bears when the effects have been removed, during fifteen days from the removal, and if within that delay they are provisionally seized by the lessor, his pledge remains attached to them as long as they are not sold, in whosesoever hands they may pass, and until his claim is discharged. Otherwise the provisional seizure, though intended to preserve that pledge, would leave it in the power of every lessee to defeat and destroy it.

Were we to consider the lessor's pledge as the most ordinary one, is not the pledgee protected by law against the removal of the things which secure his right? Is not that removal a fraud, an unlawful act, denounced by the Code, and in express terms, as a sort of theft? Can that fraud, that violation of a contract and of the law, blot out an existing right and confer on any one, after the lessor's seizure, an adverse right? I believe not. C. C. 3173; 2 An. 14; 16 An. 351.

When he furnishes his release bond, the lessee becomes the keeper of the property released; he holds it for the sheriff, who held it for the lessor, and no adverse possession, except of a *bona fide* vendee, can intervene or be acquired thereon. That keeper's obligation is to retain, preserve, and return the property. He might part with it, but not legally. His lessor, and, beyond a doubt, the sureties on his bond, could prevent any disposal of the released property to their detriment. Patzelt and Jackson so understood, for every article of furniture, every effect which had been provisionally seized, remained in the former's possession, in the latter's store, until, under Conrad's judgment, they were identified, levied upon, and sold.

The lessee, whose effects have been provisionally seized, can have the seizure released by executing, not at his choice, one of two distinct bonds, but only one bond, a forthcoming bond, which, and this at his choice, may be for an amount equal to the value of the property to be left in his possession, or equal to the amount of the lessor's claim.

What is the paramount obligation of the principal and sureties on a forthcoming bond? The name alone indicates the character of that obligation. Which ever of the aforesaid conditions they may adopt, the principal and his sureties bind themselves to return the released property; that is their first, their paramount obligation. If they fail to return

it, they are bound to account for its value; that is their secondary obligation.

The bond furnished by Patzelt does not correspond in form to that referred to in the articles of the Code of Practice. He and his sureties merely bound themselves to pay any judgment that may be rendered in favor of Conrad; the condition, "*or return the property*" was omitted, but that omission does not relieve them from the effect of a legal obligation, one which must be construed with reference to the law under which it was given.

Taken and considered alone, the law of 1868, now embodied in the 287th article of the Code of Practice, is vague and incomplete. It merely provides that a forthcoming bond may be executed, but not to whom it is to be made payable, nor under what circumstances it would be forfeited. These unexpressed conditions we find in article 289 of the same Code: "When vessels or other property provisionally seized are released on bond, the condition of that bond is that defendant shall satisfy such judgment as may be rendered against him, or return the property." In this case the judgment rendered in favor of Conrad has not been satisfied, the bonded property has been returned and sold to satisfy said judgment. Under what principle of either justice or equity could the sureties on that bond be now held liable?

Second—The lessor is not restricted by law, and he can not be justly restricted by the court, to a suit on exclusively the forthcoming bond. He can not be compelled to thus abandon a reality for a chance, to exchange pledged property, or the proceeds of that property, for an action on one of those obligations, the payment of which is always resisted, always delayed, to renounce an acquired priority, a right of preference, for additional trouble, additional litigation.

The third opponent tells Conrad, the first lessor, "leave me the funds realized by the sale made under your writ and sue on the bond." To that proposition of the second lessor Conrad answers: "That bond is no longer in existence; those who furnished it, principal and sureties, have complied with its conditions and their obligations; they have returned the released property and that property has been sold. By that return and that sale the bond is now a lifeless obligation, which can be enforced by nor against any of the parties."

We unhesitatingly acknowledge the justice of the doctrine invoked by opponent's counsel, that when two funds of a common debtor are available to one of his creditors, and a single one of these funds to another, the former will be restrained from exhausting the fund which is the only resource of the latter; but that doctrine does not apply to this case, as here there is but one fund to be distributed, and the creditor with a pledge can not be condemned to renounce that only fund for an already satisfied bond, an extinguished obligation.

Conrad vs. Patzelt.

At what date did Jackson's pledge as a lessor attach, if it ever did, to Patzelt's furniture and effects? On the fifteenth of March, 1875, four days after Conrad's provisional seizure, a seizure partly executed in Jackson's store. He was then, by that seizure, notified of the existence, nature, and extent of Conrad's claim, and leased at his peril.

It is apprehended that our construction of the law, as to the lessor's pledge, is calculated to take by surprise and deceive second and subsequent lessors. For how long, if at all? At most fifteen days, in cases of fraudulent removals—never, when the first lessor has proceeded against the lessee. During that very short and very reasonable delay, and no longer, under the specified circumstances, and none else, imprudent lessors may be exposed to the effects of a previous right, acquired under a previous contract.

When we compare to the unimportant and trifling loss of a rent of fifteen days the serious and important loss which may befall the first lessor, we can but consider that not only the imperative letter of the law, but the interest of all lessors, command the discouragement of any violation of a previous lease.

As to Jackson, he would in vain attempt to prove that he was taken by surprise; he was more effectually informed by the suit and the seizure of Conrad of the extent and nature of the latter's right than he would have been by any recordation of the lease. In 3 An. p. 252, the court said:

"It is rule of universal jurisprudence, and one which has been expressly recognized in our Code, that every man is presumed to be attentive to what passes in the courts of the State where he resides or has transactions. A purchase therefore, of an estate, *pendente lite*, even for a valuable consideration, and without any express or implied notice in point of fact, affects the purchaser in the same manner as if he had such notice, and he will accordingly be bound by the decree rendered in the suit."

In the case of the Bishop of Winchester, referred to in the same book, the question being whether subsequent mortgagees were bound by the decree of foreclosure, though not made parties, their rights having been acquired *pendente lite*, Sir William Grant held that—

"Ordinarily the decree of the court binds only the parties to the suit; but he who purchases during the pendency of the suit is bound by the decree which may be rendered against the person from whom he derives title. The litigating parties are exempted from the necessity of taking any notice of a title so acquired, and a mortgage, and, of course, a privilege taken or acquired *pendente lite*, can not be exempted from the operation of that rule."

In the case of Long vs. French, Justice Eustis said: "The defendant,

after the institution of this suit, made a sale of the property in litigation, and has urged this fact as a matter of defense. This is subversive of the first principles of justice, and only receives our notice for the purpose of expressing, as we feel ourselves bound to do, our reprobation of it. This act, on the part of defendant, shows a settled determination to sport with a contract, and to defeat, at all hazards, every effort which his adversary may make to obtain his just rights from the tribunals of his country. It is to be regretted that parties will not understand that in conduct like this they can receive neither aid nor countenance from a court of justice. 13 La. R. p. 259.

In the case of Gillespie et al. vs. Cammack et al. Mr. Justice Slidell said: "The principle which defeats conveyances made *pendente lite* applies *a fortiori* to incumbrances." 3 An. 252.

In the case of Taylor vs. Pipes, reported in 24 An. 557, Chief Justice Ludeling, in his dissenting opinion, said: "If Taylor, the purchaser of mortgaged property, be entitled to notice as a third possessor, his vendee, in case he should sell *pendente lite*, would also be entitled to the same notice, and plaintiff would discover that he had a legal right without a practical or real remedy." In support of his opinion, the judge referred to 4 La. p. 558; Story on Equity, vol. 1, p. 394; 1 John. Ch. R. 576.

How can a rule of universal jurisprudence be divided and subdivided, be made to apply to a whole and not to a fraction of that whole, to the principal and not to the accessory, to a right in and not to a right on the property? Can one incumber to the detriment of an acquired right that which he is expressly forbidden to sell to its detriment? If one sells *pendente lite*, and judgment be rendered in favor of his opponent, his sale is to be considered as that of another's property, and is no obstacle to the execution of the judgment. Can a presumed pledge on the property carry a different, a more extended right, than an absolute transfer?

If judicial process is so insignificant a notice that, though enforced in your store, in your presence, it does not even suggest the existence of a right, then, with the assistance of a few friends, litigation, by timely and successive transfers and incumbrances, might easily be transmitted from one generation to another.

In my opinion, Conrad's process left on the articles provisionally seized a brand which no one should be allowed to disregard—that of the law, a notice which no one should pretend to ignore, that of his pledge. The law would be an unfaithful sentinel if, while a right is placed under its immediate guard, it opens the door to another, a subsequent, an opposite right, one born only after the execution of the process which secured and protects the first; still more, the law would be a treacherous sentinel, if it not only opens the door to the posthumous right, but actually assists in the destruction of that confided to its guard.

Conrad vs. Patzelt.

The act of lease relied upon by Jackson, and his own declaration in court, fully establish that said lease commenced on the fifteenth of March, 1875. It was only from that date that he could have acquired any rights on Patzelt's effects, and, at that date, Conrad had already claimed and partly executed the very same right against the same lessee. It can not be that, despite his diligent course, his strict compliance with the law, he has forfeited and lost the indisputable rank of his acknowledged claim.

I consider, however, that the judgment of the lower court should be amended in so far as it allows against Patzelt the whole of Jackson's claim, instead of the amount due him at the institution of his suit, and in so far, also, as it dismisses Jackson's opposition. The property subject to the two lessors' pledge was sold for more than the amount of Conrad's claim, and any balance that may remain after the satisfaction of said claim should be applied to Jackson's judgment.

For the reasons stated, I can not concur in the opinion of my associates.

SPENCER, J. I concur in the opinion delivered by Justice De Blanc.